## THE HARRISBURGH.*

### (*Circuit Court, E. D. Pennsylvania.* October 10, 1881.)

1. ADMIRALTY—COLLISION—DUTY OF STEAM-SHIP APPROACHING SAILING-VESSEL —PRESUMPTION AS TO LATTER'S COURSE.

When a steam-ship and a sailing-vessel are approaching each other, it is to be presumed the latter will pursue the customary course, at that point, of vessels bound in the direction in which she is sailing; and if that course would cause the vessels to approach on intersecting lines and create danger of collision, it is the duty of the steam-ship to make such timely reduction of her speed or change of her course as would avoid such danger. A failure to do this will render the steam-ship liable in case of collision.

Appeal from the Decree of the District Court.

This was a libel by the owners of the schooner Marietta Tilton against the steamship Harrisburgh to recover damages for the loss of the schooner by a collision. The facts are sufficiently set forth in the opinion. The district court, in an opinion reported 36 Leg. Int. 66, dismissed the libel, and from that decree the present appeal was taken.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

*Curtis Tilton* and *Henry Flanders*, for appellants.

*Thomas Hart, Jr.*, and *J. Warren Coulston*, for appellees.

McKennan, C. J. Finding of facts by the court:

(1) On the evening of the sixteenth of May, 1877, a little before 9 o'clock, a collision occurred between the schooner Marietta Tilton, of which the libellants were owners, and the steamer Harrisburgh, which resulted in the entire loss of the schooner and her cargo, and in the drowning of six of her crew,— all but two of those who were aboard of her.

(2) The place where the collision occurred was within 100 yards of Cross Rip light-ship, off the coast of Massachusetts.

(3) The night was unusually clear, the moon shining in her first quarter, and objects were distinctly visible at a long distance, the vessels having actually sighted each other when they were about four miles apart.

(4) At the point where the collision occurred the channel was nearly a mile wide, the light-ship being on the southern border of it, and there being a sufficient depth of water for the passage of the steamer in any part of it.

(5) The steam-ship was pursuing a westwardly course, heading for the light-ship upon a straight line which would pass slightly north of it; or, in the language of the mate, "I ported my bow and headed my ship for the light-ship, keeping the light a little on my port bow." This course she maintained without any deviation or reduction of her speed.

(6) The schooner was sailing eastwardly, and when she was first seen by the steamer her position was considerably (not less than a half mile) north of the line of the steamer's progress, and so north-westward of the light-ship. When the vessels were at a safe distance apart the schooner luffed a little to the windward, and thence, sailing on the wind, which was from the south-west, she pursued a course directly towards the light-ship, upon a line which was oblique to that of the steamer's course, exposing her port light to the steamer. This was the course laid down in the sailing directions for vessels bound eastward, and she kept it steadily.

(7) The courses of the vessels thus converging to the light-ship, they must necessarily have moved upon intersecting lines.

(8) When they were within three or four hundred feet of each other, and the peril was imminent, the schooner ported and the steamer starboarded her helm, and ran stern on into the port side of the schooner and sank her.

## CONCLUSIONS OF LAW.

Most of the facts found above are undisputed. Those which are of decisive significance have been the subjects of very earnest and exhaustive contestation, and the evidence touching them is, to some extent, conflicting. It has, therefore, been the duty of the court to collate and consider carefully this evidence; and it is believed that the facts found are the result of the preponderating weight of it, and of the inherent probability of their truth. It would be superfluous to vindicate these conclusions by a detailed discussion of the evidence,

because they are not subject to review. It is enough to state them, and apply the law to them. That is simple and well settled. It gave the right of way to the schooner, and required her to keep her course, which she did; it imposed upon the steamer the duty of slowing up, stopping, or changing her course, neither of which she did. The adoption of either of these precautions would have averted the disaster. The circumstances were such as to make this duty imperative upon the steamer. She sighted the schooner at a distance of four miles, again at a distance of two miles, and observed that the schooner was sailing on the wind and so south-easterly. She ought to have presumed that the schooner would pursue the customary track, at that point, of vessels bound eastward, and a proper observation of the actual direction of the schooner's course ought to have warned her seasonably that they were approaching each other on intersecting lines, and that she was bound to regulate her movements in such an emergency to avoid all danger of collision. A timely reduction of her speed, or a slight change in her course, would have accomplished this, but she directed her course, with undiminished speed, to pass between the light-ship and the schooner, and so brought herself in contact with the latter. This was her avoidable mistake, and so she must be held solely accountable for the consequent loss.

The theory propounded by the respondents' counsel does not furnish a satisfactory solution of the problem. It rests upon the hypothesis that the vessels were sailing upon parallel lines, sufficiently far apart not to involve any danger of collision, and that, when they were within three or four hundred feet of each other, the schooner suddenly luffed across the steamer's bow, and thus brought them in contact; but it is unsupported by sufficient evidence, is against the decided weight of evidence in the case, is inherently improbable, and, in the judgment of experienced seamen, is perhaps entirely impracticable.

There must be a decree for the libellants, and a reference to a commissioner to ascertain and report the damages.